Court. My name is Jeremy Yellen. I represent Farron Jones appellant in this case, and it's my pleasure to be here. I would like to, if I'm able to, reserve two minutes for rebuttal at the end, if I'm allowed to do so. At a minimum, Mr. Jones is entitled to a new trial, and at a maximum, his convictions must be overturned and he must be discharged. We've raised three issues that seem to be very important in this case, and they revolve around whether we can trust these convictions. The first issue that was raised in the brief pertains to the quality of evidence, and the testimony from the two major witnesses by the government clearly show that the quality of the evidence is highly suspect, given the level of intoxication from both Mr. Birthmark as well as the complainant, Ms. Kane. Now, I raise that issue first, not because I necessarily think it's the strongest argument, but that's the focus when we ask the Court to consider the other two arguments. The question that is paramount is whether Judge Haddon, on the facts of this case, should have provided written instructions to this particular jury, given the fact that I asked twice for those written instructions to be jurors were writing down the elements or the judge's re-instruction. What happened was, the judge read the instructions, he refused to provide the jury instructions written for him, then the jury had a question, please delineate between the two charges, attempted sexual abuse and sexual contact, abuse of sexual contact, and the jurors were writing notes, and when they left, I again begged the Court, I pleaded with the Court to provide a set of instructions, and the Court said it understood my concerns, but nonetheless didn't provide the written instructions. And that argument seems to be paramount because it is so simple to provide the written instructions so that we can be required. Well, that's true. Isn't that up to the trial judge? I think it's up to the trial judge. And the cases that were cited by Mr. Richter, who wrote the brief for the government, cited a 67 case, a 74 case, and an 81 case, none of which were from the Ninth Circuit, and none of which dealt specifically when the In the 67 case that the government What difference does that make? The instructions are about the law, not the facts. And if the facts are easy or hard, the instruction is kind of a separate question, isn't it? Well, I understand that, but the courts, the appellate courts that dealt with this injected that fact or that issue into its justification almost as a by the way, there was plenty of evidence to convict the fellow anyway. So I think it's important. Plus, in this day and age with the word processor and those cases are are at least 20 years old, some are 30 years old. It's so simple to do to provide the written instructions that there is one of the old guys in the courtroom. I can tell you it wasn't difficult before the word processor came along to have an extra copy of the instructions to give to the jury. Well, I understand that, but I'm trying to think of why. Why wouldn't it be just why couldn't they just do it? Why couldn't the judge do it? It's up to the trial judge. Some some judges and I've heard him say that. Think that it gives the jury a chance to over concentrate on the instructions or one paragraph or one sentence or one phrase in the instructions instead of looking at the whole case. So they say, no, I won't give them the instructions. If they have a question, they can ask me. Why isn't that totally just what converts it into an absolute duty from a discretionary power of the judge? Well, because I disagree with the fact that that the jurors, whether it's testimony that's stressed during argument or instructions, the jury in this case, Your Honor, the jury in this case, they asked for two. The definitions of the two charges and judge hadn't that only gave them the definition of the charge, but gave them the elements. So they're focusing. We know they're focusing. And if we know they're focusing, why not just provide them with a written set of them? So instead of relying, they're taking notes. And why? Instead of rely on this scribble, clear text as to what the government had to prove in order to justify the convictions, which are very serious. And so it's it's I understand that generally the courts, the other courts of appeal that have dealt with this years ago have said that the judge has discretion. But I think that because of the constitutional implications that we're not certain of the verdict. Now, wait a minute. You've left from this discretionary review. The Constitution hasn't changed. And you're arguing. I looked at your brief again. You're arguing a constitutional violation here, but it has nothing to do. It's just generally you've got to prove facts beyond a reasonable doubt. The authorities you've cited do not make this a constitutional violation. You're arguing that as the best authorities that you're going to argue to us for that in your brief. Well, what I've argued is is a due process. I think that I think that if if a person have no cases on that, that's correct. I understand that. And the government cited three cases that I didn't cite that dealt with the issue. I could find one one decision that was unpublished that just dealt with it really briefly. But it seems to me that when we have a person who's going to go to jail for a long time because of very serious charges and the jury has questions, pointed questions, and they're taking notes to part of the judge's response and counsel asked for it, why can't it just be provided? In fact, the 67 case, why can't isn't a legal argument? I'm sorry. Why can't is not a legal argument. That's some sort of like, why don't we do this? But I'm looking for the basis of your argument, because I think the standards of those old cases are still there. Well, I understand. But it's a cost. I focus partly on a cost benefit analysis. What's the why can't is a discretionary term.  But I think we go back to due process, Your Honor. I think that when there's the jury wants to know about these elements and the request is made, that 67 case, the jury specifically asked for the written instructions, the judge refused, and then it was an eight-day trial, much longer. The judge refused, and then later on, if my reading of the case is correct, the judge provided a couple of written instructions on pointed issues. So, and, and — Counsel, you're almost to your rebuttal time, if you did want to save that two minutes. Yes. I just wanted to — I keep on referring to the 67 case. If I'm pronouncing it right, it's Ortell is that case that I'm referring to. Thank you. Thank you. From the government. Good morning, Your Honors. May it please the Court. I'm Carl Rosted from the U.S. Attorney's Office in Montana. I want to first thank the Court for accommodating my schedule this morning and putting these two cases at the bottom of the calendar. I think that the issues raised by Mr. Yellen in his brief, the first two are sufficiently covered in Mr. Richter's brief regarding sufficiency of the evidence and the exclusion of a witness or the exclusion of DNA testimony regarding DNA appearing on the throat of the victim that belonged to somebody else. As the Court knows from the briefs, the Court determined that since there was an admission that he, Mr. — I don't recall his name right now. The other person there had kissed the victim. Mark. Mr. Berthmark. Thank you, Your Honor. Anyway, so that kind of leads us to this jury instructions issue, which I think is one of the more interesting issues. There's only one — in preparing for my argument, there was only one case that I have found that actually found it to be a reversible error not to give instructions in a particular case. And the Court looked at just what the Court here has looked at. It's certainly an abuse of discretion standard, but the discretion can be abused in a case where the evidence is long, the trial is long, there's a multi-count indictment. There are certain factors that make it more difficult for a jury to deliberate with a view of the law than would certainly present in this case where there's only two counts, the trial only lasted two days. I did not see the logical connection in Mr. Yellen's argument between the fact that there may have been a lot of intoxication in this case and how submitting the jury instructions would have been helpful in that regard. I think Judge Haddon's view, as expressed on the record, is that it is a discretionary matter with him and he prefers not to do it. And therefore, he didn't — for the same fears, I'm confident, that are expressed in some of the case law, which is that the jury may have a tendency to pick out one page from all of them and go over it and over it and over it and either convict or acquit based on a focused view of one instruction rather than considering the evidence or the instructions as a whole. Your Honors, I think everything else is covered in the brief, and if there are no questions. I think not. Thank you. Thank you. Yellen, you do have some rebuttal time remaining, if you'd like to use it. Thank you very much. With just touching on issue two, which was the DNA evidence, it seemed that Judge Haddon said that that evidence wasn't relevant as to the DNA on Ms. Kane's neck that came from Mr. Berthmark. We've argued that that goes to the bias of Mr. Berthmark's testimony, and of course, the Abel case talks about bias is almost always relevant. So we think that that's well briefed, but I just wanted to point that out. Back to the point about whether this case, the evidence, was overwhelming or not, it's clear that there was very conflicting testimony. The reason why that's relevant to whether the jurors should get the instructions in written form is that the other cases that the government itself has cited, two of the three, other than Calabresi, Conley, and this Ortho 67 case, talk about the fact that the evidence was overwhelming. And I analogized in my opening brief the difference between when it's unclear whether the jury is properly instructed or when the jury gets the wrong instructions, as was the case in this Rubio case. And I think that that's the analogy that I'm hoping to get through because it is such an important issue, and it's so simple to remedy, particularly when the jury just has two instructions that they want read back when they're relying on their notes, particularly when, I have 20 seconds left, particularly when they're told don't rely on your notes, rely on your memory when it comes to testimony. And they're writing notes. And so Mr. Jones is sitting in jail, and we don't know if the jury knew the law when they found him guilty on both counts. I have three seconds left. Thank you very much. Thank you, counsel. The case just argued is submitted, and we'll turn to the final case on the morning calendar, which is United States v. Johnson. We'll hear first from Mr. Wilson.
judges: Brunetti, T.G. Nelson, Graber